I intend to spend eight minutes, and I intend to address the issues of materiality and some sentencing issues. My name is Gary Lindstenberger. I'm appearing on behalf of Donald Carroll. And then Mr. Tremin, counsel for Mr. Williams, will be spending seven minutes. And then Mr. Friedman will allegedly spend five if we, in effect, give him any time. I'm kidding. He gets five minutes at the end. Are you from Jackson? Yes, sir. Would the clerk please keep track of those separate times, the 8, 7, and 5, so that we can enforce that? Thank you. Please proceed. Thank you, Your Honor. May it please the Court, on behalf of Mr. Carroll, I'd like to address first the issue of materiality. And I would like to bring to the Court's focus that we're not claiming that false statements in connection with a loan application cannot be material or are not naturally material. I believe that they would be. The issue really is material to whom. Counsel, as I understood it, the bank, your case is basically that when they make a loan, they don't even read them. They don't pay any attention to them. They make the loan regardless. And that's why it's not material. But my thought was, well, maybe they don't pay much attention to them or check them out, because they're figuring on the legal sanctions to keep people honest. And they don't have to check themselves. They can save them money, because they just trust the legal sanctions. Just the way the IRS doesn't audit you, it trusts you to be honest, because it knows you will fear its power if you're one of the unlucky few that gets caught. Am I misreading what your argument is? I believe so, Your Honor. That's not our main argument. We had a situation where Donald Carroll applied for loans to a lender. Now, it becomes a little confusing, because the government referred to these lenders as mortgage brokers. The evidence established that those firms were also lenders, and the application was to that party. For example, TNT was one of the lenders. Those lenders then resold those loans. And the government really, they only called one mortgage broker slash lender in the whole case as a witness. Most of the witnesses they put on were parties that I think it's easier to refer to them as secondary buyers, buyers of these loans. And so the issue that I tried to raise was that my client, from the beginning of my opening, I said these are false statements in the applications, but the lenders completely know that they're false. And, in fact, the one lender that they called as a witness admitted that he knew that Mr. Carroll was using a false name. But it didn't matter to him, because he was just looking at the equity in the property. The government called none of the witnesses who related to most of these loans. Instead, they called secondary buyers of these loans. Now, I did cross-examine those buyers to try to establish that they also didn't care, that these were easy call lenders. And I misunderstood your argument. It's not that the lender was gold through their own carelessness. It's that the lender basically colluded in passing bad paper on to the purchaser of the paper. But the false statement was not material to the lender because they knew it was false. Right. I wouldn't say colluded in passing on. My client didn't know that these were being passed on. There was no evidence that my client colluded with these lenders in passing it on. And that was part of my defense as well. Right. I challenged the government to show some evidence that my client had any state of mind suggesting he knew that they were passing on. And, Your Honor, it's not that you — But isn't the case law not that, in fact, anybody relies on the false statements, but rather there's statements that are capable of influencing a decision or could, you know, could influence a decision? So why does it make any difference whether or not the lender may have thought the statements were less than factually reliable? Well, it makes a difference because I think reliance is relevant. But the Court's corrective standard is basically does it have a natural tendency to influence? And all of us would have the same gut reaction that if you have false statements in a loan application, it would have a natural tendency to influence. The question is influence whom? If my client was dealing directly with these banks like CanSeco, there's no question from the evidence that there would have been proof of materiality. But if I come to Your Honor and say, well, you lend me 50 bucks and my name is John Doe, and you say, well, I know your name is Gary Linsenberg. I say, yeah, but I'd like to have a loan agreement for John Doe. And you say, okay, here's the 50 bucks. It doesn't have a natural tendency to influence you because you know that there is a falsity there. So really that's where the materiality argument focuses. It's an objective standard, isn't it? It's not a subjective standard. It's an objective standard, but it has to relate to who you're dealing with. Right. The decision when you issue the loan. When the lender's passed on the loans, but at one point they're on the hook for them, they may make the original loan. Just because there's a secondary person involved doesn't mean they didn't make the decision to issue the loan. Well, the objective standard has to tie into the facts. It has to be objectively. Would a reasonable person who says to the borrower, I'm happy to lend you money under a false name, like Mr. Algor testified to in this case, who's the one person called, in that situation, is it material to submit a false statement when that objective reasonable person knows that these are. Do they use negotiable paper? They use loan applications. Well, I'm asking about the note. You know, promissory note can be a negotiable form so that a holder in due course of the promissory note can proceed against the maker. Do they use a negotiable form of note? Your Honor, I believe that there was no evidence introduced of any negotiable paper between the lender and Mr. Carroll. They didn't put the note in evidence? They put in the subsequent note with the secondary buyer. And part of the government's argument was, hey, he must know that it's being passed on because he ended up paying money to them. Am I ---- Hold on. I don't know if you got the point of my question. The point of my question is that if you make a negotiable instrument and you get money in exchange for it because of its negotiability, the commercial requirements of negotiability require that you be treated as making statements that are good for anyone in the world to rely on, that it may be negotiated to. Well, I understand. The only instruments introduced by the government were instruments that came about after a resale down the road. That doesn't mean that my ---- that there's any proof that my client has an understanding that any of his false statements are being passed on. These are easy to file loans. People are buying and selling them. Even the second ---- I see the negotiable instrument query is because it may not matter. I can't remember your client's name. Say it's Carroll, Donald Carroll. If he writes, I, Donald Carroll, promise to pay to the order of John Doe $10,000, and he and John Doe both know there are misrepresentations surrounding that loan, nevertheless, Donald Carroll can anticipate, because he's signed the negotiable instrument, that it will be negotiated. But there's no evidence, as far as I recall, there's no evidence of the negotiable instruments between Mr. Carroll and the lenders that was introduced by the government. There were only these later payments and instruments with the secondary buyers, as I recall from the evidence. Your Honor, I believe I'm out of time. I would submit the matter. I only ask to bring to your attention that there were sentencing issues in which the government conceded err in part, and I would hope that the Court would take account of that. Thank you, counsel. Thank you. And no one concedes anything just because they don't get time to argue it orally?  In their brief, there was a concession. Thank you, counsel. Good afternoon, Your Honor. My name is Michael J. Tremin. I represent Mr. Williams. The brief two points that I wanted to address in terms of oral argument go to the issue raised by Mr. Williams with regard to both the jury instructions and the understanding and interpretation of the indictment. The government, in its brief, took the position that the defendant argues that there are two objects of the conspiracy. One object to commit all four crimes listed in the indictment, and a second object also listed in the indictment is paragraph number 2. The government's position is that this argument was based upon an erroneous reading in the indictment, and that from the government's standpoint, the indictment charged a conspiracy with just the four crimes which are alleged in paragraph number 1 in the first superseding indictment. So that issue was fairly straightforward. Is this a two conspiracy allegation, a two-object conspiracy allegation in the first superseding indictment or a four superseding, I'm sorry, a four-object conspiracy? And if it's a four-object conspiracy, all of those objects are contained in paragraph number 1 in the first superseding indictment, and therefore, what is the significance of any of paragraph number 2? In looking at the indictments, and one of the points that occurred to me that may not have been made clear in the papers we submitted is what takes place in paragraph number 3 of the first superseding indictment? Paragraph number 3, which is on page 3 of the appellant's excerpt of record, is under the heading, means by which the objects, plural, of the conspiracy were to be accomplished, and then proceeds to say, as part of the agreement, conspiracy, and scheme, the defendants and others participated and engaged in the following types of fraudulent transactions, et cetera. The significance of that language is that the word scheme is only used in paragraph 2 of the indictment, and the term fraudulent transactions is only used in paragraph 2 of the indictment, so that if the government's argument is correct, then what are the objects of the conspiracy that the indictment refers to in paragraph 3? They can only be what's reflected in paragraph 2. Counsel, I agree with you that the indictment's pretty inartfully worded, but don't the jury instructions actually cure it by making it clear that there's one conspiracy charged with several objects? No, I don't think it does, because it, in fact, is exactly the contrary. Because what the jury instruction said on that issue is that it's sufficient if you find a conspiracy with regard to one of the crimes, just one of the crimes, alleged in the indictment. Under the language of the indictment, we submit that the four crimes which are identified in the first paragraph, if that is the object of the conspiracy that the jury finds, it is not sufficient for them to find one. They have to find all four. Why is that? I mean, traditionally, you can indict in the conjunctive and prove in the disjunctive. Because there are two kinds of indictment language that are recognized in the cases. One of those is an indictment in which you can have a conspiracy to commit crime A, you can have a conspiracy to commit crime B, et cetera. There is another type of conspiracy where the object of the conspiracy is to commit crime A, B, C, and D. If you have the latter, then that object, in order for it to be proven, you have to prove that the object of the conspiracy is to commit all four of those crimes, not just three of the four, not just two of the four. Why isn't it just an indictment in the conjunctive? Why do I have to read it the way you've described? Because it's the only way it makes sense. If you – and that's why in my reply brief, I submitted another indictment which has a different example, and it's the other indictment is the way Your Honor is talking about it, which is it's structured in such a way that there are separate objects set out paragraph by paragraph, each object of which relates to a different crime. And that's the disjuncture that Your Honor is talking about. But the cases that we've cited all the way up to the United States Supreme Court recognize that you can have a conspiracy, the object of which is to commit multiple violations of law. That is what we submit this allegation, paragraph number one, represents. And if that's the case, it is not sufficient to find a conspiracy to commit only one. You must find a conspiracy to commit all four if that's the object that you're relying on. The government argument is that paragraph two is not even an object that the – that they were relying on for the jury to find. Our position is to the contrary. There were two objects in this particular conspiracy, and because of the jury instructions, they directed the jury to incorrectly find only one crime as being sufficient. And in my client's case, there was no evidence of his involvement in the fourth crime alleged in that paragraph. So therefore, the jury resubmit could not have found as a matter of law him guilty of a conspiracy in which that is the object. The second issue that I wanted to address briefly was raised in the government's brief with regard to the case of United States v. Troy. In looking at my reply to that, it occurred to me that I hadn't quite fully fleshed out our position with regard to the application of Troy, or in this case, a non-application of Troy. In the Troy case, what the Ninth Circuit found was that it could conclude under the facts of the case and the jury's determination that Mr. Troy was guilty of one count which involved a container which was stored at his warehouse. The jury found him not guilty with regard to other containers which were stored in other places. And so what the Ninth Circuit found was that because of the nature of that particular finding, they could uphold it even though they rejected the conspiracy count and reversed on the conspiracy count. And that is because, in the language of the Ninth Circuit, the jury must have concluded that that action, the one container in his particular warehouse, was based on his conduct, not derivative conduct under a co-conspirator type of liability. That's not the case here. All of the substantive counts involving Mr. Williams are directly tied to the conduct of the other conspirators alleged in the case. He is never named solely in any particular individual count. And as a practical matter, he was not – there is no evidence that he was involved in any of the wire fraud or mail fraud substantive actual mailings or wirings. So therefore, his liability had to be derivative, and therefore, Troy doesn't apply. Thank you. Thank you, Your Honor. Good afternoon, Your Honors. My name is Stanley Friedman, and I represent the appellant, Shirley Jackson, in this case. Ms. Jackson entered guilty to the case and is just appealing the sentence that she received. I'd like to address my arguments not to any of the matters raised in the brief, but the case that was submitted by the government. And, Mr. Jerome, do you have a question for the case? I have a question about it, Your Honor. Please. It looks to me like on page 91 of the excerpt, the judge states for the record that he doesn't clearly recall what testimony he reviewed or what exhibits he examined in connection with the sentence. He knows he was concerned about the dates of some of the transactions, and he believes the information in the pretrial services report fully documents all the court's findings with respect to conduct that he found relevant. Now, why shouldn't I read that to mean that you don't really have a claim based on the I can't even remember exactly what I reviewed from the trial, even though I was there for the whole trial. But what I do know is everything that I'm relying on for this sentence in its relevant conduct determination is in the pre-sentence report. And, obviously, you have notice and an opportunity to be heard on the pre-sentence report, and you were heard. You could have put on testimony contradicting the pre-sentence report if you wanted to, or other evidence contradicting it. So why doesn't that eliminate the problem of the judge relying on things from the trial when Jackson wasn't at the trial? Your Honor, to some extent, the judge indicated that she also relied on her notes. That's quoted somewhere else in the brief and the actual trial exhibits. I know she went back and forth, but why doesn't this statement at page 91 mean at the end of the day, Your Honor, I think she did rely largely on the pre-sentence report, the P.S.R., and when one looks at the P.S.R., it's basically a master P.S.R. I don't have access to the other defendants' P.S.R., but based on my experience and my review. Sure, they always are in multi-defending cases, but I don't see where that helps you. And you can still, if you want to, put on a case at sentencing to show that certain aspects of the relevant conduct are wrong insofar as they relate to your client. And that was actually sought by way of request of an evidentiary hearing, which the district court did decline. And so the statement that you cite, that's at, I don't know, you say it's at page 36 of the P.S.R. You say that the original pre-sentence report, oh, paragraph 36, states that it significantly relied on unspecified trial testimony. How does that affect the analysis? I mean, if the P.S.R. is relying on unspecified trial testimony, and the judge is relying on that, how does that cure the problem? Yes, Your Honor. Actually, that's a true statement, because if that's a true statement, then I would think that's what you might have just said in response to Judge Kleinfeld's question. Yes, Your Honor. Thank you. I'm looking for that paragraph. There is a paragraph in the P.S.R. that says multiple witnesses testified during the trial, but it doesn't specify which witnesses gave such testimony. And I gathered your argument was that the trial judge relied on some things that, you know, Judge Kleinfeld makes the appropriate response, I think, that yes, but she does say she looked to the P.S.R., and we all know we can look to the P.S.R., that if the P.S.R. itself relied on unspecified trial things, then they're all relying on quicksand to get to the bottom of it. So I'm wondering if you have the same problem. Yes, Your Honor. In fact, I'm looking for that paragraph, but there is a paragraph that talks about the trial and talks about the testimony of the witnesses who testified at trial, but it doesn't identify which witnesses testified and what their testimony was. So that would deprive Ms. Jackson an opportunity to challenge that testimony, especially in light of the fact that she wasn't there and doesn't have any ---- Well, why would it deny her? Why couldn't she just put on testimony at the sentencing showing that what the pre-sentence report says is wrong and what her witnesses say is right? Well, to some extent, Your Honor, it's ---- it was a five-week trial, so it would require basically negating perhaps the entire trial, and that's also the government's burden, since it's an add-on that Ms. Jackson gets the six points for the plea of guilty, but then however many points gets added on is the government's burden. Well, sometimes sentencing hearings are long. I mean, I've seen lawyers, when I was a district judge, litigate the sentence rather than the guilt. Yes, Your Honor, and actually, that was originally the trial counsel's strategy in the case, and that's why he had asked her to have an interim hearing, because if one were to read the change of plea hearing before Judge Cooper, it almost didn't go through. Government's counsel actually presented a fairly elaborate conspiracy purportedly engaged in by Ms. Jackson, actually listed the properties, and then it's a ---- it's ---- basically, Ms. Jackson denied that, but entered enough of a conspiracy. It's actually a different type of conspiracy, I think, that the Court believed there was a sufficient factual basis. So she did enter a guilty plea to conspiracy, but not to the type of ---- the wide-ranging conspiracy that was alleged by the government. Do you have one thing you want to say about the new case? Your Honor, actually, I think that the Riley case that was submitted by the government actually relates to both issues submitted by Ms. Jackson. On that first part, the one that we were just discussing, the due process issue, there, it was actually very clear to the defendant how the Court was calculating a sentence. There was an evidentiary hearing, which was granted by the Court, and rather than the Court relying on ---- I'm not sure that there was a trial in the case the way I read the case. It probably was not a trial, but the Court basically determined the sentence by X times Y equals Z. It said there were a certain number of checks, I'm going to assign a certain dollar value to each check, and then multiply them together and come to an amount. Without regard to whether that was the right procedure or not, at least the defendant clearly knew how the district court was going to calculate the 2F1.1 range that way. It was a matter of multiplication. Here, what Ms. Jackson was faced was a PSR that refers to basically unidentified witnesses who testified in a five-year trial. And based on that and based on the Court's review of its notes, which Ms. Jackson had no ability to review, you know, calculated the sentence. Perhaps if there was an evidentiary hearing, it may have been cleared up. I was looking at your brief because I was thinking that's really a good argument, that you ought to get an evidentiary hearing so that you can present evidence to show the pre-sentence report is wrong. But I don't see that in the issues presented for review, so it doesn't look like we can go off on that, on the denial of an evidentiary hearing. Did I miss something? Well, I thought that was assumed in basically the due process, but that might have been a way. She doesn't have, the defendant didn't have a right to an evidentiary hearing, but it would have been a way, I think, to cure the issue, because the government or the court would have been required to disclose the information relied upon. And then the defendant would have been able to challenge it. So I would respectfully suggest, Your Honor, that that would be part of the first issue for review. I see. Thank you. I see that my time is up. Thank you, Counsel.  May it please the Court. Good afternoon. My name is Elena Duarte. I was lead trial counsel at the trial in the district court below. I want to start just by addressing one of the questions that Your Honor, Judge Wardlaw had about paragraph 36 of the original pre-sentence report. If you actually look at the original pre-sentence report, and it is in the defendant's researcher record, it is the guideline pre-sentence report in the GR 16. And the date on it, Your Honor, should be the original one which was submitted about the 29th of October. October 29. But a trial had not yet concluded. There was no guilty verdict. I didn't – I apologize for not addressing this in my brief, because I didn't recognize that that was being argued until I read the reply. But the pre – the probation officer actually used the word testimony. And if you look at paragraph 36 specifically on page 175 of the ER, he doesn't talk about trial. He says numerous witnesses have asserted, blah, blah, blah, the testimony is detailed, although the testimony is consistent. Your Honor, he was not talking about the trial. He was talking about the testimony, and he used the term erroneously, coming from the detailed FBI 302s, the reports of interview that were provided. Doesn't that assertion just run exactly counter to your argument? The whole principle that we're discussing is that the PSR or something must tell the defendant enough information so that he can object or agree or comment upon it, give him notice of it so he has some opportunity before the sentencing or at the sentencing hearing to dispute it. And this paragraph talks about how there – it's vague, which witnesses. It appeared to me it was talking about trial testimony. How could it possibly be talking about 302 evidence? Well, Your Honor, I submit that to you, Your Honor, and perhaps to appellate counsel, because he wasn't at the trial, it may appear as if it's talking about trial testimony. But there's no way that it could be. And to counsel at the time below, who was making the argument, he knew it couldn't be. He didn't argue falsely. He never even argued that that particular paragraph talked about trial testimony. His main argument was that Bills and Williams, who were the government's witnesses at trial, the cooperators, should be offered to him for cross-examination. But, you know, if the trial wasn't even over, I'm having a hard time understanding how the district judge could rely on trial testimony when the defendants weren't even convicted. I can explain, Your Honor. All right. I can explain very briefly. Here's what happened. An initial pre-sentence report, which the Court is looking at, was asked to Jackson, who fled three months prior to the trial. An initial pre-sentence report was released before the trial concluded. That had the information in it that the Court had brought up, and I wanted to bring that to the Court today. But it actually refers to everybody, unless all the co-defendants. That's correct. Because it was a seven-defendant case originally, and the pre-sentence reports all referred to all seven. But, Your Honor, in terms of timing and in terms of clearing up the consideration of trial testimony, because obviously I'm arguing that it's not error and I can go into that, but I want to make sure that everybody, that the Court has the facts correct. This initial pre-sentence report was released prior to the conclusion of trial. The probation officer did not have access to trial testimony. It could not have meant trial testimony. And all counsel knew it, because the trial had to be ---- How far had trial gone? It was almost concluded. I believe it was to the jury, but ---- Well, how do you know the probation officer didn't have access to any of this? Unless the defendant gave him the bailies, which I know that I didn't. It would have had to have been the bailies. How do we know that the probation officer from ---- we're supposed to review the record on appeal. That's all we have. We can't say, oh, well, he had to be there in order to know. In that case, let me just point out, Your Honor, and then I'll move on, that although it does inartfully use the word testimony, if you look at the conclusion of the trial date, which is in the record, which was post the issuance of the pre-sentence report, and you notice that he doesn't talk about the word trial at all in this paragraph, I would submit to you that that is perhaps an erroneous use of the 302s. And it was ---- It's certainly the probation office, and it's known to happen in the central district that testimony could have been shared with the probation officer who a trial testimony that previously occurred, given under oath, could have been shared to the probation officer charged with having to prepare Ms. Jackson's PSR and getting it to the judge by a certain day. Well, it certainly could have, Your Honor, and ---- I don't know why one inference is more reasonable than another, based on this record. Well, within the record, Your Honor, I agree with you that the possibilities are endless and that he did use the word testimony. But beyond that, if I may, beyond that, the fact that the word testimony was used in the PSR, the probation officer went about doing the PSR based on the indictment. He laid out the full indictment. The trial was presented, obviously, because we wouldn't have been permitted to present it otherwise, based on the indictment. Thus, the key issues here, as the Court brought up, are notice and opportunity to object. Defendant was on notice of all the evidence that was being used against her. She had the opportunity and to object, excuse me, and she did object. Counsel, let me address that part. Well, go ahead and finish your sentence. And she presented a declaration, which the Court ---- I believe this is contrary to the argument, but I do have the cite somewhere in my notes right here. The Court did fully credit the declaration. The only thing that was submitted by her, the declaration of Winston Allen, the Court fully credited it and indicated that she would give it, despite my argument to the contrary, that she would give it to all that's due. However, she went ahead and realized that that declaration did not cover the extent of the fraudulent conduct, but she did credit it. I'm sorry, Your Honor. This is a complex case, so I may very well not understand correctly what the facts are. Let me tell you what picture I have and what concern I have so you can address it. Yes, sir. Jackson says, I'm guilty of the crimes I'm pleading guilty to, but I am not guilty of all the relevant conduct that's described in the pre-sentence report. The trial has started, but it has not concluded. The pre-sentence report writer says that he's relying on testimony, which may or may not be a poor use of words, and the judge refers to testimony, which also may or may not be a good choice of words. We don't know. In any event, the fact remains there's a dispute about what relevant conduct can be fairly attached to Jackson. Jackson says, I want an evidentiary hearing so I can argue about and present evidence on the relevant conduct. The judge says, no, you can't have one. Why isn't that an abuse of discretion? The judge has discretion, so we review for abuse of discretion on granting an evidentiary hearing. Why in these circumstances isn't it an abuse of discretion that renders the sentence a denial of due process? She gets heard, but not heard enough because she doesn't get to put on evidence. I understand, Your Honor, in several reasons. And first, I have to apologize because, as the Court noted, since this wasn't explicitly a question presented, I'm a little off my balance here, but I'm going to go ahead and answer that question to the best of my ability. Your Honor, there are several reasons. First of all, Jackson was not credited with every indictment – excuse me, with every property presented at trial. She was only credited at the end of the day, which is what we're talking about, after the judge imposed sentence, with Golden Star, for which there was no loss, Rodiella, which was presented at trial but was also extensively briefed in the presentence report. Zero Court, which was not presented at trial but was extensive in the presentence report. Dumbarton, not presented at trial, extensive in the presentence report. Mary, which was referred to at trial, however, again, was extensively detailed in the presentence report. And Oxford, which was not presented at trial. So already we're talking about Golden Star, which had no loss, Rodiella, Sotelo and Malvern. So we're down to three properties which even potentially had anything considered in them that was given at the trial that the defendant did not know about. And then you look at the presentence report, and you see how detailed those descriptions of the properties, of the losses, and of what occurred were in there. And you see that the consideration, if any, would have been minimal. And let me also point out that at Rt. 74, the district court does make a remark about the additional evidence she heard at trial. And she says basically, and I'm going to paraphrase it here because it's not in front of me. She says, you know, Ms. Jackson, a lot of people say you did a lot of bad things, but I'm not going to consider that. Because, you know, she obviously was being very careful. She talks a lot about burdens and standards and how common sense would indicate that you're involved. I believe this is at ER 74, although I can check it, Your Honor, if you're having trouble finding it. She says, she basically says, before that, you know, I know that there's lots of common sense would indicate that you're involved. However, I'm not going to find it. On these ones where you say she had fair notice from the presentence report of exactly what she was being punished for as relevant conduct, did she get a fair chance to confront those? Well, Your Honor, first of all, she certainly had a chance to be aware of them and to object to them and have her objections considered. It's the government's position, as I argued in my brief. Should she have been allowed to put on some evidence? After all, she couldn't very well put on evidence at trial. She wasn't a party to it. Well, Your Honor, had she, and I raise this with the district court as well, had what she wanted to do and what she submitted she wanted to do. It does me no good if I'm a defendant to be fully aware that the judge is punishing me for something I didn't do if I'm not allowed to put on evidence to show that the judge is about to make a mistake. Well, the evidence that she did submit, the declaration, was fully credited. Other than that, she was not specific, and the record shows this, Your Honor, about what she wanted to do. And my objection below was that what she's basically arguing consistently, and if you look at the papers which are included in the ER, I think that they will bear me out. She consistently was denying her guilt, broad-based denials, not anything specific about what she would present on the basis that Bills and Williams, which were witnesses called at trial, were liars. Now, my position was that she may have the right to present evidence. However, the right to have an evidentiary hearing merely to cross-examine the government's witnesses who have already, the 302s have been turned over, it was in the PSR, obviously they testified at trial, but even that was not the case. All a 302 is is an FBI agent writing a record of what he says the witness told him. That's not the equivalent of cross-examination. That's correct, Your Honor. I meant as it goes to the notice issue. So it would have been fully. I wasn't asking you about the notice issue. I was saying suppose a person has full and fair notice that the judge is about to punish her for something she didn't do. Isn't she then entitled to be heard in a way that's adequate to the circumstances and may include evidence? If she had evidence to present, Your Honor, but there's nothing in the record, not even her extensive arguments, that indicates that she had any evidence to present. What she wanted to do and what she admitted she wanted to do was cross-examine. And it's the government's position, as I've cited Pinto, and Natatella, which is within Pinto, that the same rights to confrontation do not attach to sentencing as attach at trial. And that's it, Your Honor. Well, it's true that it's not the same, but why couldn't she have just subpoenaed those witnesses to appear at the sentencing, and she could just do a direct examination of a hostile witness? Your Honor, I think had she told the district court that that's what she wanted to do, and had she broached that to the government, I mean, obviously, this is outside the record because of the court. I mean, I've seen that done. Certainly that could be done, Your Honor. And had she expressed that that's what she was going to do because she had, again, something to put on, I think that that would have been permitted by the district court. But I think the main problem was, was that all she was arguing was cross-examination, not even what it would show. And again, and I apologize because this issue, although I touched on it, it wasn't my main focus. But I do think that the district court went about it very carefully. It's clear from the record only seven properties were even considered. So we're not talking about the scheme. When she did discuss the other properties, which came from the trial testimony and came from all the stuff that was being objected to, she indicated she wasn't considering those properties. So I want to draw the Court's attention to that because that is the bottom line. And if I may, just proceed to answer a couple of the questions that were raised by other counsel as well. You have six minutes. I just did want to say one more thing about Jackson, that one of the one of the this Court noted that the findings were fully documented, and the Court did indicate that everything she relied on was in the PSR. And that was at the ER-91, so that's in the record as well. If I may just go back briefly to jury instructions. I just want to point out to the Court, from Mr. Trenum's argument, and I know all defendants have joined on this issue, that if you look at Instruction 11, which is in all the ERs of this case, you will see that the conspiracy to commit, as one of the members of this Court pointed out, does list, indeed, four crimes as objects. The instructions, as I believe Judge Wardlaw pointed out, the instructions do serve to clarify, Instruction 11 in particular, which is the conspiracy pattern instruction, what might otherwise be a little bit of a muddy indictment. However, it is clear not only from the instruction itself what the objects of the Mr. Trenum's argument regarding CHOI, because in the scheme, if Your Honors look at the indictment and you look at the charging of the mail fraud and the wire fraud, which follow the conspiracy, the charging of the mail fraud and the wire fraud incorporate paragraphs 2 through 11 as alleging the facts. They do not incorporate paragraph 1 because that charged the conspiracy. They incorporate 2 through 11, which outlines the scheme itself. And that is also the allegation in the wire fraud and mail fraud scheme. Let me ask you another, I'm sorry to go back to this, but this is truly confusing in light of the argument, at least to me, that you made earlier. All right, we have the original pre-sentence report dated October 29, 2001, right? Yes, ma'am. And then we have the addendum, which says that the original pre-sentence report was disclosed to the parties on November 1, 2001. So it makes reference to this document. And then it contains objections. It says, for the objections of the parties. And, but on page, I guess it's page 2 of the addendum, but it's ER 354. 354, Your Honor? Yes, it says, it goes on, it says, since the disclosure of the PSR, the probation officers reviewed additional evidence indicating Jackson was involved. And then it specifically refers to these four other properties that you didn't mention. And so they've reflected based on, I'm not sure what, additional loss into the, to affect her offense level. Then there's another objection to, number two. And then the probation officer's response is that their loss, its loss calculations are based predominantly on reviews of discovery and trial exhibits. But it says that he was not present during the trials of the code events. So he did, the probation officer seems to be saying, he did review discovery and trial exhibits. It's quite possible that he reviewed trial exhibits, Your Honor. The trial exhibits were part of discovery that was turned over. And I honestly don't recall at what, because he was reviewing trial exhibits, Your Honor, in order to. It's just very unclear to me what was relied on in calculating this offense level. Maybe the easiest thing is just to send it back and have the district court make it clear what she was relying on. Well, it may be, it may be, Your Honor. However, I do, I do want to point out that because it's only these seven properties, and, and it's only these seven properties, and only three of them were even presented at trial, and if the court will compare the original PSR with the addendum that the court has concerns about, I think for those three properties, the court will see that the information did not change. So even if, the government's position is that even if the probation officer somehow relied on exhibits or on things in trial that were also obviously presented in other forums, and even if the district court somehow considered that there was no error because she did not count those properties where additional  I wonder if you could address the contention from Mr. Carroll that this wasn't material because the people he was dealing with knew their statements were false. Yes, Your Honor, and thank you. Thank you. Yes, Your Honor, I would like to touch on that very briefly. Your Honor, perhaps I misunderstood Mr. Linsenberg's argument. However, I do want to clarify just a few facts for the record. Although Mr. Linsenberg does argue correctly that the series of loans that were Conseco or Green Tree Lenders, and there were seven of those loans presented at trial, those loans were actually secondary purchases by Conseco. And I'll go back to that in a minute, but I want to clarify this. Aside from those seven properties, the government presented evidence from the lenders' witnesses at IndyMac, original funding, that was not a purchased loan. First Keystone Bank, original funding, not a purchased loan. Anchor, original funding, not a purchased loan. Universal, same. Conti Mortgage, same. First Magnet, same. Chase Manhattan, same. It was only Conseco that was a purchased loan. And if I misunderstood Mr. Linsenberg, I wanted to correct that. The government's position, however, is that that is not relevant, because Nader confers a objective standard on materiality. The government also presented evidence, and, Your Honor, this is outlined in my brief, and I know I'm running out of time, but the government. Well, I can't. You say on the. Don't forget it's irrelevant either. You say you had seven primary purchases from Carroll, is that right? Received by the estate. There were seven properties that were absorbed from TNT, who actually initially funded the loan, by Conseco. No, I'm talking about the other ones. Oh, the ones I listed? One, two, three, four, five, six. You say you had seven purchases from Carroll, is that right? I believe it's eight different lenders, Your Honor. All right. And they all said they were deceived by these statements? Correct. Well, they said that they would not have loaned money had they known that these statements were false. All right. Well, I think that's important. I mean, using the magic word objective doesn't go very far, I think. Things are important depending on context, depending on purpose, and what's objectively false or true. Those are not written in stone. And there may be statements that are quite false, but objectively are irrelevant. So I think you should depend on the primary. You're right, Your Honor. And I also just want to say along those same lines that we're not talking about 1014-type false statements in this case. We're talking about completely different identities that were taken by Mr. Carroll. He had five different Social Security numbers, three different names he was using. The lenders had no idea he was the same person. And they testified at trial that the only reason they were able to tie him to the seven properties that all had the conseco as the lender was because all the appraisals were done by Mr. Williams, Mr. Sherman's client. So I wanted to point that out as well. I see I'm out of time. Would the Court allow one more comment? I think we've concluded, unless the judges have questions. I just would like to. I felt like I took up so much of your time. If you have one more comment, go ahead. I did. If I could just look at my notes. I also wanted to point out very briefly, I believe it was Judge Noonan that had this question, although I'm not sure. No, it was Judge Kleinfeld. It was about the promissory notes. I honestly don't know the answer to your question as to which type of note it was. But I did cite in my brief, and it's at page 28, if the Court has a chance to review it, there are numerous sites to the record where, anticipating this argument, the government did introduce exhibits that tended to show that Mr. Carroll, Mr. Linsenburg's client, was aware that his loans were destined for, if you will, a higher place, that he wasn't just dealing with the brokers. We had deeds of trust that he signed with the ultimate funder on them. We had correspondence between he and the ultimate funders. We had checks that he wrote during the pendency of other loans that he was writing checks to ultimate funders. So we put in a lot of that evidence, and I did cite to it in my brief, Your Honors, to show you that we did try to tie him as best as we could to those funders. Thank you.  Thank you very much. Thank you, counsel. United States v. Carroll, et al., is submitted. And that concludes the day's arguments. We're recessed until 9.30 tomorrow morning. All rise. This Court is adjourned.
judges: Noonan, Kleinfeld, Wardlaw